IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP ST. LOUIS,<br><br>           Petitioner,<br><br>vs.<br><br>BRIAN FISCHER,[1] Commissioner, New York Department of Correctional Services,<br><br>           Respondent. | No. 9:07-cv-01082-JKS<br><br>ORDER DISMISSING PETITION |

   Petitioner Philip St. Louis, a state parolee appearing through counsel,[2] filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254.  St. Louis is in the custody of the New York Department of Correctional Services, currently on parole.[3]  Respondent has answered, and St. Louis has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

   Following a jury trial, St. Louis was convicted in the Clinton County Court of two counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law, § 220.39(1)) and one count of Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal

---

   [1] Brian Fischer, Commissioner, New York Department of Correctional Services, is substituted for William Brown, Superintendent, Eastern Correctional Facility.  Fed. R. Civ. P. 25(d).

   [2] Although the Petition was filed on his behalf by counsel, the record indicates that St. Louis was granted leave to file his Traverse *pro se*.  Docket No. 13.  However, counsel has informed the Court that he continues to represent St. Louis in this proceeding.  Docket No. 17.

   [3] At the time the Petition was filed, St. Louis was incarcerated at the Eastern Correctional Facility.  The records of DOCS indicate that St. Louis was released on merit parole on January 27, 2010.

Law, § 220.16(1)). The trial court sentenced St. Louis, as a second felony offender, to three concurrent, indeterminate prison terms of 10 to 20 years on each count. St. Louis timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction and sentence, and the New York Court of Appeals denied leave to appeal on October 25, 2005.[4] St. Louis's conviction became final 90 days later, January 23, 2006, when his time to file a petition for *certiorari* in the Supreme Court lapsed.[5] On August 31, 2006, St. Louis, through counsel, filed a motion to vacate his conviction under N.Y. Criminal Procedure Law § 440.10 in the Clinton County Court, which denied his motion in a reasoned decision. The Appellate Division, Third Department denied leave to appeal on February 16, 2007. St. Louis filed his petition for relief in this Court on October 15, 2007. On April 30, 2010, mail sent to St. Louis at his last known address was returned as undeliverable.

## II.  GROUNDS RAISED/DEFENSES

St. Louis raises three grounds for relief: (1) the procedure utilized in this case to investigate the allegations of jury tampering, misconduct and *voir dire* misrepresentation was contrary to standards established by the Supreme Court; (2) by reason of the jury tampering and misconduct, he was denied his Sixth Amendment rights to a fair and impartial jury; and (3) a

---

[4] *People v. St. Louis*, 797 N.Y.S.2d 652 (N.Y.A.D.), *lv. denied*, 840 N.E.2d 145 (N.Y. 2005).

[5] *Pratt v. Greiner*, 306 F.3d 1190, 1195 n.1 (2d Cir. 2002).

*Brady* violation.[6]   Respondent contends that the petition is untimely.  Respondent raises no other affirmative defense.[7]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[10]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[11]  When a claim falls under the

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1962) (short-hand reference to discovery violations by the prosecution).

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

"unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[12] The Supreme Court has made it clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[13] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[14] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[15] Petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[16]

In applying this standard, this Court reviews the last reasoned decision by the state court.[17] In addition, the state court's findings of fact are presumed to be correct unless the

---

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[14] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[15] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[16] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[17] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

petitioner rebuts this presumption by clear and convincing evidence.[18]  Although pre-AEDPA precedent established that deference is due findings of state appellate courts,[19] the Second Circuit has left the question open with respect to AEDPA cases.[20]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, *i.e.*, findings of a state appellate court are presumed to be correct.

## IV.  DISCUSSION

Respondent contends that the Petition is untimely.  A state prisoner has one year from the time his or her conviction becomes final within which to file a petition for federal habeas corpus relief.[21]  Unless tolled, St. Louis's one year expired January 23, 2007.  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is excluded from the limitation period.[22]

St. Louis filed his § 440.10 motion to vacate his conviction in the Clinton County Court on August 31, 2006, 221 days after his conviction became final.  Thus, on that date, St. Louis had 144 days of his 365 days remaining within which to file his federal petition.  The time to file the Petition in this Court was statutorily tolled as long as the § 440.10 motion was properly pending before the New York courts—until the Appellate Division denied St. Louis leave to appeal on

---

[18] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[19] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[20] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

[21] 28 U.S.C. § 2244(d)(1)(A).

[22] 28 U.S.C. § 2244(d)(2)

February 16, 2007.  At that point, absent further tolling, St. Louis's time to file his Petition in this Court expired 144 days later, July 10, 2007.  St. Louis filed his petition in this Court on October 15, 2007, 97 days too late.

While St. Louis appears to concede in his Traverse that his Petition is untimely with respect to most of the grounds raised, St. Louis argues that his jury tampering claim is not untimely, relying on the provision in § 2244(d)(1)(D) that the limitations period does not commence until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  St. Louis does not specify the date upon which he contends he actually discovered or could have discovered the factual predicate for his jury tampering claim.  St. Louis attached three letters from counsel to his Traverse concerning the transcripts of certain criminal proceedings involving Kathleen A. Rock, the person St. Louis contends tampered with the jury.  These letters are dated January 27, February 10, and April 25, 2006.  St. Louis argues that when the last of these transcripts was received, April 25, 2006, an independent investigation was performed of the individuals identified in the transcripts and the § 440.10 motion was filed in August 2006.  In denying his § 440.10 motion, the Clinton County Court held:

> [St. Louis] now submits this motion pursuant to CPL 440.10(1)(h) on the grounds that [his] rights were violated by an alleged plan by a member of the Adirondack Drug Task Force to "plant" a confidential informant in the restaurant to make derogatory remarks about [St. Louis] to members of the jury.
> The Court has reviewed and considered the following: the notice of motion, dated August 31, 2006, the affidavit in support by defense counsel, sworn to the same date, as well as attached exhibits A through H, the People's letter response, dated November 20, 2006, and the reply affidavit of defense counsel, sworn to on December 1, 2006.
> The Court has set forth the relevant facts of this case in its prior decisions and will not do so again except as regarding this particular confidential informant (hereinafter "CI").  This CI had no involvement with this particular case in terms

of making any controlled buys from [St. Louis].  However, during the trial of [St. Louis] the CI was working with a member of the Adirondack Drug Task Force, DEA Agent Steve Capps, in relation to a case pending in Essex County against the CI.

Shortly after the verdict in this case, the CI had a hearing in Essex County in which the Hon. Jan H. Plumadore conducted a hearing to determine whether the CI ought to receive a sentence of lifetime probation in the Essex County case, as opposed to a sentence of incarceration, as a result of assistance in a federal drug investigation.  Agent Capps testified on behalf of the CI at the hearing and favored the probation sentence.

[St. Louis] states that the CI has been identified as the person who spoke to the members of the Jury in this case in the Plattsburgh restaurant.[1]  Therefore, according to [St. Louis], the CI was "intentionally present" at the restaurant that day and functioning as a CI for the Adirondack Drug Task Force by making the comments to the jurors that [St. Louis] was a "two-time loser".  [*Sic*]  This, again according to [St. Louis], was an obvious attempt on the part of the Adirondack Drug Task Force to influence the trial's outcome.

---

[1] The Court notes the hearsay statement that the CI denied being a confidential informant when interviewed by a private investigator hired by [St. Louis].  Given the work done by confidential informants, the Court does not find this denial surprising or of any import in this matter.

---

[St. Louis's] motion must be denied.

If in alleging a violation of his constitutional rights under CPL 440.10 (1) (h), [St. Louis] means the conduct of the CI, whether or not at the behest of the Task Force, rendered the verdict suspect, the Court has already dealt with this issue.  The Court held an extensive hearing into the allegations of this misconduct and found that each of the jurors indicated he or she rendered the guilty verdict based only on the evidence, not on any comments made by someone outside the courtroom.  This determination has been appealed and upheld on appeal.  Thus under CPL 440.10 (2) (a), the Court must deny the motion.

If, on the other hand, [St. Louis] alleges the Task Force caused the CI to be present in the restaurant and speak to the jury and the verdict should be overturned for this tampering, [St. Louis] has made no presentation of sworn facts supporting this allegation.  There is simply no evidence that the CI's presence in the restaurant was anything but a coincidence or that any member of the Task Force knew where the jury was going to eat lunch that day.  Under CPL 440.30 (4) (b), [St. Louis] has failed to present sworn allegations of fact substantiating or tending to substantiate this essential fact.

For the reasons stated above, [St. Louis's] motion is **DENIED**.[23]

---

[23] Docket No. 10-8, pp. 3-6.

The date upon which the limitations clock begins under § 2244(d)(1)(D) is a fact-specific issue.[24]  "Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."[25]  St. Louis bears the burden of proving that he exercised due diligence in discovering the new facts.[26]  "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim."[27]  St. Louis does not identify in his Traverse the specific facts that were first discovered as a result of the transcripts, or in which of the three sets of transcripts those facts were found.  In his Traverse, St. Louis argues:

> Petitioner argues that the issue of tampering with a jury trial by an agent for the government was not known before the direct appeal to the Third Department, and it must be considered new evidence that ultimately was exhausted in state court on February 16, 2007.  As clearly defined within Petitioner's C.P.L. § 440.10 motion filed in Clinton County Court (R.A.- D)¹ the Petitioner made a motion in Essex County Court to Honorable Andrew Halloran to unseal Rock's transcripts on October 22nd, 2005.  Judge Halloran granted the motion on December 27, 2005, and the trial attorney, Joseph R. Brennan, began receiving transcripts from five stenographers who were involved in Rock's case.  The last transcript was received on April 25, 2006 (PA-180).  An independent investigation was performed of the individuals identified in the unsealed transcripts and the C.P.L. § 440.10 motion was then filed in August of 2006.  As the motion for habeas corpus relief was filed in October of 2007, this matter was timely filed with the Court.

---

[24] *See Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000) (construing the identical language in 28 U.S.C. § 2255(f)(4)).

[25] *Adams v. Greiner*, 272 F. Supp. 2d 269, 274 (E.D.N.Y. 2003) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2002).

[26] *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006); *see Duran v. Hernandez*, 275 Fed.Appx. 738 (9th Cir. 2008); *see also In re Boshears*, 110 F.3d 1538 (11th Cir. 1997) (construing identical language in § 2244(b)(2)(B)(i)).

[27] *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998).

---

[1] RA plus letter is respondent's appendix and PA plus letter is petitioner's appendix.

> Respondent's recitation of the C.P.L. § 440.10 motion (Respondent's brief at 28-29) is limited to the following: Kathy Rock was identified through photos by Erin Hunt and Carrie Lafountain, Ms. Rock denied being an informant to an investigator, and she was observed in a bar talking about her legal troubles. Based on those facts, Petitioner claims Rock was intentionally present to tamper with the jury. Respondent then cited the motion filed by the special prosecutor, who stated the allegations claimed by petitioner were mere speculation.
>
> The Petitioner now submits the sworn affidavits that were contained in the C.P.L. § 440.10 motion that contradict respondent's theory, and provide *prima facie* evidence to conclude that Ms. Rock intended to speak with the jurors about the case.[28]

The affidavits St. Louis refers to are all dated on or prior to July 15, 2005. The only "new fact" that possibly came to light as a result of reviewing the transcripts was that the CI, Ms. Rock, was less than truthful when she denied in her interview, conducted by St. Louis's investigator, that she was a confidential informant.[29] This "new fact" did nothing more than further undermine Ms. Rock's credibility, which was already challenged by the other affidavits. Moreover, St. Louis does not advance any argument that the fact that Ms. Rock may have been a CI is an essential fact to his jury tampering allegation.

What is critical in this case is that no matter how St. Louis may title his claim, jury misconduct or jury tampering, the essential factual basis for the claim is identical. St. Louis's claim is predicated upon a single basic premise—extraneous prejudicial information was improperly brought to the jury's attention, which resulted in a denial of his Sixth Amendment

---

[28] Docket No. 13, pp. 3-4.

[29] The fact that the defense investigator inquired about Ms. Rock's status as a CI is a strong indication that the defense knew, or had information indicating, that Ms. Rock was a CI not later than the date the investigator interviewed Ms. Rock, March 31. Docket 10-4, pp. 46-47.

right to a trial before an impartial jury.[30] A criminal defendant's Sixth Amendment rights are implicated when a jury considers incriminating evidence that has not been admitted at trial. It matters not whether the extraneous incriminating evidence is inadvertently or deliberately brought to the attention of the jury. "The issue is 'not the mere fact of infiltration of some molecules of extra-record matter, . . . but the nature of what has infiltrated and the probability of prejudice.'"[31] In a federal habeas proceeding, a district court must determine whether a constitutional error had a substantial and injurious effect or influence in determining the outcome.[32] Consequently, this Court must determine whether the extra-record information had a prejudicial effect on the verdict.[33] That all of the essential facts to establish St. Louis's claim, the extraneous information and the manner in which it was imparted to the jury, were well known to St. Louis and his counsel long before his conviction was final is established by the fact that the issue was raised on appeal, and specifically addressed and rejected by the Appellate Division.[34] The trial court found, and the Appellate Division affirmed, that the verdict was not affected by the extraneous information. Whether or not Ms. Rock was a CI, intended to influence the jury, or had any other motivation for her conduct, has no relevance to this determination. The fact that in his § 440.10 motion, St. Louis (or his counsel) decided to argue a different legal theory does not

---

[30] *See Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965).

[31] *Loliscio v. Goord*, 263 F.3d 178, 185 (2d Cir. 2001) (quoting *United States ex rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir. 1970)).

[32] *Fry*, 551 U.S. at 121; *Brecht*, 597 U.S. at 637-38.

[33] *Loliscio*, 263 F.3d at 185 (the *Loliscio* panel applied the stricter "beyond a reasonable doubt" test of *Chapman v. California*, 386 U.S. 18 (1967)); *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994).

[34] *St. Louis*, 797 N.Y.S.2d at 654-55.

change the governing principle—the extraneous information must have had a prejudicial effect on the verdict. The state courts found that the extraneous information had no prejudicial effect on the verdict. Review of that determination by this Court is not only barred because it is untimely, but also because, under AEDPA, this Court is bound by that factual finding unless it is rebutted by clear and convincing evidence.[35] No "new fact" raised in either the § 440.10 motion or the Petition before this Court had any relevance in determining the prejudicial impact of the extraneous evidence on the verdict. Thus, § 2244(d)(1)(D) is inapplicable.

Even assuming that the facts underlying the "jury tampering" claim were not discovered until April 25, 2006, the "triggering date," St. Louis's claim is still untimely. The § 440.10 motion was not filed until August 31, 2006, 128 days later. At the time his § 440.10 motion was finally terminated, February 16, 2007, St. Louis had only 237 days remaining, until October 11, 2007, within which to file his federal habeas petition. St. Louis did not file his Petition until October 15, 2007, four days later.

The Court also notes that the last mail sent to St. Louis was returned undeliverable and the records of the Department of Correctional Services indicate that St. Louis was released on parole more than 90 days ago. St. Louis having failed to keep this Court apprised of his current address as required by Local Rule 10.1(b), this matter may be dismissed under Local Rule 41.2(b).[36]

---

[35] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

[36] St. Louis was specifically and conspicuously directed to notify the Clerk's Office and counsel for the Respondent of any change in his address and that failure to do so would result in dismissal of this action. Docket No. 2, p. 3.

## V.  CONCLUSION AND ORDER

The Petition is untimely.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[37]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[38]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  August 12, 2010.

                                                      /s/ James K. Singleton, Jr.
                                                      JAMES K. SINGLETON, JR.
                                                      United States District Judge

---

[37] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[38] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.